Phil S. Flemming (014778)
ROBAINA & KRESIN PLLC
5343 North 16th Street, Suite 200
Phoenix, Arizona 85016-3231
Telephone: (602) 682-6450
Facsimile:  (602) 682-6455
psf@robainalaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Tracy Kennedy,<br><br>    Plaintiff,<br><br>v.<br><br>Vertex Education, LLC, an Arizona limited liability company,<br><br>    Defendant. | No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff, Tracy Kennedy (hereinafter "Plaintiff" or "Ms. Kennedy"), by undersigned counsel, for her Complaint against Vertex Education, LLC (hereinafter "Defendant") alleges as follows:

**NATURE OF ACTION**

1. This action seeks remedies for Plaintiff against Defendant for unlawful sex discrimination and retaliation.  The claims are brought pursuant to Title VII, 42 U.S.C. §§ 2000, *et seq*., the Arizona Civil Rights Act, A.R.S. §§ 41-1461 through 41-1464, and the Arizona Employment Protection Act, A.R.S. § 23-1501.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff is a United States citizen residing in Maricopa County, Arizona.

3. Defendant is an Arizona limited liability company with its headquarters in Maricopa County, Arizona.  Defendant conducts business in Maricopa County, Arizona, to provide management and operation services for certain charter schools.

4. At all relevant times, Defendant has had at least 15 employees.

5. The events giving rise to the claims in this action occurred primarily in Maricopa County, Arizona.

6. This Court has proper jurisdiction based upon federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

7. Venue is found in this Court, where the Defendant corporation resides and substantial events occurred, pursuant to 28 U.S.C. § 1391(b).

**FACTUAL ALLEGATIONS**

8. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

9. Defendant hired Plaintiff as Vice President of Human Capital Resource Management at a base annual salary of $185,000 plus a 20% bonus option, beginning November 28, 2018.

10. Defendant is an employer and Plaintiff has been an employee within the meaning of Title VII, 42 U.S.C. § 2000e(b) and (f), and the Arizona Civil Rights Act, A.R.S. § 41-1461(5)-(6).

11. As a condition to employment, Defendant required that Plaintiff undergo a wardrobe restyle and a makeover.

12. As an experienced human resource professional, Plaintiff was offended at the condition and did not want to undergo a restyle and makeover but felt compelled to do so in order to get the job.

13. Once Plaintiff began employment with Defendant, she observed that the male managers appeared to have had no wardrobe or makeover conditions imposed upon them.

14. The first day Plaintiff was on the job, she requested her job description, goals, and the normal new-hire procedures, but instead she was told simply to jump in and get her "feet wet."

15. Plaintiff took initiative to confer with the human resources personnel and other employees to learn her job on her own and began to address concerns that management had discussed with her during her interview process.

16. During her interactions with Defendant's employees, she immediately learned of other serious personnel problems that the Human Resources Department need to correct, such as unlawful withdrawal of health insurance benefits during a marital separation, improper accrual of paid leave, and improper accounting for benefits and payroll 401k contributions.

17. Plaintiff devoted herself to work and bettering the Defendant's personnel policies and practices, to ensure compliance with applicable laws and to update Defendant's policies.

18. Plaintiff reported to Defendant management her reasonable beliefs that there were violations of law by: (a) removing an employee's spouse unlawfully from health insurance coverage absent a qualifying event; (b) failing to make timely payments and proper accountings of employees' Health Savings Accounts and 401k contributions; (c) failing to comply with the Arizona Fair Wages and Healthy Families Initiative, A.R.S. §§ 23-371, *et seq.*, requiring notice and mandated sick leave accrual; (d) failing to timely pay employees wages for mandatory training sessions; and (e) refusing to provide employee voting leave, where mandated pursuant to A.R.S. § 16-402.

19. In response to Plaintiff's multiple reports of violations of law, Defendant's managers and founders reacted with hostility to her and even outright refused to correct certain violations to comply with the laws.

20. In one instance, the Chief Operating Officer told Plaintiff he did not want to hear about the violations concerning health care and 401k benefits, coldly and dismissively saying, "That's enough."

21. During March 2019, Plaintiff raised concerns with Defendant's President and Chief Executive Officer Brandon Jones about the requirement that she had to undergo a wardrobe and style makeover as a condition to being hired. She said the condition was belittling and was unfair because male managers had not received the same condition. Mr. Jones admitted he knew and participated in the decision to impose the condition on her hiring.

22. After the March discussion where Plaintiff objected to different treatment toward her as a female manager, Defendant's President and CEO no longer was supportive and began to take adverse actions against Plaintiff, including an allegation that Plaintiff had accused the Defendant Chief Financial Officer of embezzlement. In fact, Plaintiff identified personnel who were present at the meeting who would corroborate that she had not done so.

23. Mr. Jones subsequently confirmed Plaintiff's version of what happened, after speaking with corroborating witnesses.

24. On another occasion, Mr. Jones accused Plaintiff of acting unprofessionally and hostilely during a Vice President Team meeting. Plaintiff had to take time to defend herself and identify witnesses, who did confirm to Mr. Jones what happened.

25. On at least three separate occasions, management told Plaintiff she needed to "soften" her approach because her assertiveness was a problem for CEO Mr. Jones. The criticisms were discriminatory because males were not subject to criticisms for similar conduct.

26. During meetings held in April and May 2019, founder Mr. Hale and Mr. Jones severely criticized Plaintiff for the additional costs to correct some of their violations, in particular those involving payroll and sick leave, but the violations had occurred long before Plaintiff even was hired. Plaintiff was not at fault.

27. Founder Mr. Hale's demeanor toward Plaintiff became hostile and adversarial, such that he no longer even would greet her when they saw one another; he would not reply to Plaintiff's hello and he would look away.

28. Defendant's managers heightened the scrutiny of each of Plaintiff's actions, to nitpick.

29. Plaintiff became severely anxious and distressed, reasonably viewing Defendant's actions as threats to fire her or force her out of her job.

30. During summer 2019, Defendant's managers, Plaintiff learned of a payroll crisis that happened a year ago, long before she was hired, so Plaintiff monitored the

1  processing of new personnel to prepare for the initial July 2019 payroll.

2  31. A week before the first payroll of the school year, the executive team informed Plaintiff of problems with the payroll cycle. Plaintiff worked with the Human Resources and Payroll Teams, they identified a short list of errors to correct and they reported the situation to the CEO. The CEO seemed disappointed that the problems were addressed.

32. During spring and summer of 2019, Plaintiff and her staff prepared revisions to the employee handbook for Legacy schools and she highlighted the changes in policy in a summary to the managers.

33. Multiple drafts of the employee handbook were emailed to managers for review and no concerns were raised until July 10, 2019, when Mr. Hale objected to the policy to permit voting leave for Arizona employees, as mandated by state law.

34. Mr. Hale said he did not care what the law required, because all employees could vote by mail in the State of Arizona. His communications with Plaintiff were hostile.

35. Managers discovered an error after the employee handbook was finalized, and immediately accused Plaintiff of making the error. Plaintiff defended herself and reminded Mr. Jones that she had distributed multiple drafts to managers, but no one had identified the error earlier.

36. Mr. Jones contacted Plaintiff, at home on leave, on July 27, 2019 to report that he had investigated a typographical error in the employee handbook and learned that another employee took responsibility for the mistake in the employee handbook. Therefore, Mr. Jones told Plaintiff he concluded she had not been deceitful.

37. Before the July 27, 2019 telephone call concluded, Mr. Jones raised a different accusation against Plaintiff, asking if she had announced to others that she would defy his directions about the maximum number of paid days off employees could keep. Plaintiff once again denied the false accusation and stating it was unbelievable that a professional of her experience would publicly announce she would disobey her supervisor; Plaintiff identified witnesses who were present to confirm what was said.

38. Plaintiff told Mr. Jones that she felt under siege from Defendant's management with unfair and completely false, harassing accusations when she was simply doing her job properly.

39. Due to Plaintiff's severe anxiety and stress from the hostile workplace, she took paid time off the afternoon of July 24 and continuing for full days on July 25 and 26. After seeking treatment from her physician, July 29, 2019, she was prescribed anti-anxiety medication and instructed to take a leave of absence from work.

40. The morning of August 1, 2019, Mr. Jones sent Plaintiff an email asking how to reach her while she was on sick leave and he told her she was not eligible for FMLA or other leave.

41. In her role as Vice President of Human Capital Resource Management, Plaintiff knew that employees routinely were granted sick and family leave even if they had not been in the workplace long enough to qualify by statute. She knew Defendant was treating her differently.

42. On behalf of Defendant, at 5:15 p.m. on August 1, 2019, Mr. Jones sent Plaintiff an email abruptly terminating her allegedly because "we've had some concerns about your employment performance." Defendant had given Plaintiff no warning and given no opportunity to improve any concern about her job performance.

43. Defendant's failure to reasonably investigate and take corrective actions responsive to the sex discrimination and hostile work environment complaints has caused Ms. Kennedy distress and anxiety.

44. Defendant's discrimination and retaliation after Plaintiff's activities seeking compliance with the laws included heightened criticisms, hostile actions and demeanor, and false accusations that culminated in her sudden wrongful termination.

45. Plaintiff has filed a timely complaint of employment discrimination for sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC").

46. The EEOC issued a Notice of Right to Sue to Ms. Kennedy, dated December

13, 2019. Ms. Kennedy exhausted her administrative process and is timely filing this action against Defendant.

47. Plaintiff Ms. Kennedy has suffered and continues to suffer lost wages and other harms resulting from Defendant's wrongful, unlawful actions.

## CLAIM ONE

### Sex Discrimination and Retaliation in Violation of Title VII, as Amended

48. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

49. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

50. Defendant unlawfully discriminated against Plaintiff Ms. Kennedy by subjecting her to disparate treatment on the basis of her sex, as alleged above.

51. Defendant created or permitted a hostile work environment against Plaintiff, which was sufficiently severe to alter the conditions and terms of employment.

52. The discrimination resulted in her wrongful termination.

53. Pursuant to Title VII, it is unlawful for an employer to retaliate against an employee who has opposed unlawful or participated in actions in opposition to unlawful discrimination.

54. Defendant's retaliation following Plaintiff Ms. Kennedy's protected activities in opposition to sex discrimination created an objectively and subjectively hostile work environment that significantly altered the terms and conditions of Ms. Kennedy's employment.

55. Plaintiff has suffered damages as a result of the sex discrimination and retaliation. Plaintiff has suffered lost wages, harm to her professional and reputation, expenses, emotional distress, mental anguish and loss of enjoyment of life, for which she seeks remedies to be made whole. in an amount to be determined at trial,

56. Plaintiff seeks the full remedies available under law, including equitable and compensatory relief and recovery of attorneys' fees and costs.

## CLAIM TWO

### Sex Discrimination and Retaliation in Violation of Arizona Civil Rights Act

57. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

58. The Arizona Civil Rights Act ("A.C.R.A."), A.R.S. § 41-1463(B)(1), prohibits discrimination "against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's . . . sex."

59. Defendant unlawfully discriminated against Plaintiff Ms. Kennedy by subjecting her to disparate treatment on the basis of her sex, as alleged above.

60. Defendant created or permitted a hostile work environment against Plaintiff, which was sufficiently severe to alter the conditions and terms of her employment.

61. The discrimination resulted in her wrongful termination.

62. Pursuant to the A.C.R.A., it is unlawful to retaliate against an employee who has opposed or participated in a proceeding to oppose unlawful discrimination. A.R.S. § 41-1464(A).

63. Plaintiff opposed the unlawful sex discrimination of making her to undergo a wardrobe and style makeover, and subsequently was subjected to unfair heightened criticisms and retaliation.

64. Plaintiff participated in activities to oppose unlawful discrimination when she reported unfair and discriminatory treatment to her superiors to investigate and correct.

65. Defendant's retaliation following Plaintiff Ms. Kennedy's protected activities in opposition to sex discrimination created an objectively and subjectively hostile work environment that significantly altered the terms and conditions of Plaintiff's employment.

66. Plaintiff has suffered lost wages and benefits, harms to her profession and reputation, and other damages including front pay for which she should be compensated in order to be made whole, in an amount to be determined at trial.

67. Plaintiff seeks the full remedies available under law, including equitable and

compensatory relief, and recovery of attorneys' fees and cost.

## CLAIM THREE

### Violation of Arizona Employment Protection Act

68. Plaintiff incorporates all previous paragraphs as though fully set forth herein.

69. Pursuant to the Arizona Employment Protection Act ("AEPA"), A.R.S. § 23-1501(A)(3), an employee has a claim against her employer for wrongful termination of employment where the termination is in retaliation for disclosing a violation of state law.

70. The AEPA prohibits an employer from terminating an employee in retaliation for the employee's reasonable disclosure to a supervisor with authority to investigate of the employee's reasonable belief that the employer or its employee "has violated, is violating or will violate the Constitution of Arizona or the statutes of this state." A.R.S. § 23-1501(A)(3)(c)(ii).

71. Plaintiff reasonably disclosed violations of Arizona laws to her supervisor who had authority to investigate and act to correct the violations.

72. Plaintiff's reasonable disclosures included violations of the A.C.R.A. for the sex discrimination when Defendant had conditioned its job offer on her agreement to restyle her wardrobe and undergo a makeover, but it did not impose such conditions on male managers.

73. Plaintiff reasonably disclosed to her superiors that Defendant had violated or was violating the Arizona Fair Wages and Healthy Families Initiative, A.R.S. §§ 23-371, *et seq.*. that requires an employer to provide appropriate paid sick leave.

74. Plaintiff made reasonable disclosures to her superiors that Defendant had violated or was violating A.R.S. §16-402 by refusing to allow employees voting leave, i.e., paid time off to vote as required under the conditions specified in A.R.S. §§ 23-371, *et seq*.

75. Defendant violated the AEPA when it retaliated against Plaintiff after she made the reasonable disclosures of Arizona laws.

76. As a direct result of the Defendant's retaliation, Plaintiff has suffered and continues to suffer lost wages, benefits, and emotional distress in amounts to be proven at

trial.

77. Plaintiff seeks the full remedies available under law, including equitable and compensatory relief, and recovery of attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Tracy Kennedy prays for judgment on her claims against the Defendant including, but not limited to:

A. For an award of damages for lost wages and benefits resulting from the Defendant's actions;

B. For an award of damages to make Plaintiff whole, including but not limited to emotional distress, damage to career and reputation, lost future pay and benefits as a result of Defendant's wrongful conduct;

C. For an award of compensatory damages resulting from Defendant's wrongful conduct;

D. For appropriate equitable relief against Defendant, including corrective actions and training;

E. For an award of attorneys' fees and costs against Defendant, as authorized by Court rules or statutes, including but not limited to 42 U.S.C. § 2000e-5(k), A.R.S. § 41-1481(J), A.R.S. § 12-341.01;

F. For an award of prejudgment and post-judgment interest against Defendant;

G. For an award of taxable costs against Defendant;

H. For such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all claims and issues subject to jury trial.

DATED this 22nd day of January 2020.

ROBAINA & KRESIN PLLC

By /s/ Phil S. Flemming
Phil S. Flemming
Attorneys for Plaintiff